(Slip Opinion) Cite as: 571 U. S. \_\_\_\_ (2013) 1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–99

UNITE HERE LOCAL 355, PETITIONER *v.* MARTIN MULHALL ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[December 10, 2013]

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 12–99

———————

## UNITE HERE LOCAL 355, PETITIONER *v.* MARTIN MULHALL ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[December 10, 2013]

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting.

Section 302(a) of the Labor Management Relations Act, 1947, 61 Stat. 157, as amended, an antibribery provision, makes it a crime for an employer "to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value" to a labor union that represents or seeks to represent its employees. 29 U. S. C. §186(a)(2). Section 302(b) makes it a crime "for any person to request [or] demand . . . , or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a)." §186(b)(1). The question in this case is whether an employer violates §302(a) by making the following promises to a union that seeks to represent its employees: (1) that the employer will remain neutral in respect to the union's efforts to organize its employees, (2) that the union will be given access (for organizing purposes) to nonpublic areas of the employer's premises, and (3) that the union will receive a list of employees' names and contact information (also for organizing purposes). A further question (the other side of the same coin) is whether a union violates §302(b) by requesting that the employer perform its contractual obligations to fulfill these promises.

The Eleventh Circuit held that these items are "thing[s]

of value" and that an employer's promise to "pay" them in return for something of value from the union violates the Act if the employer intends to use the payment to "corrupt" the union; the Eleventh Circuit also held that a union's request that an employer make such a payment violates §302(b) if the union intends to "extort" the benefit from the employer. 667 F. 3d 1211, 1215–1216 (2012). Other Circuits have held to the contrary, reasoning that similar promises by an employer to assist a union's organizing campaign (or merely to avoid opposing the campaign) fall outside the scope of §302. See *Adcock* v. *Freightliner LLC*, 550 F. 3d 369 (CA4 2008); *Hotel Employees & Restaurant Employees Union, Local 57* v. *Sage Hospitality Resources, LLC*, 390 F. 3d 206 (CA3 2004). We granted certiorari to resolve the conflict.

We have received briefs on the issue, and we have heard oral argument. But in considering the briefs and argument, we became aware of two logically antecedent questions that could prevent us from reaching the question of the correct interpretation of §302. First, it is possible that the case is moot because the contract between the employer and union that contained the allegedly criminal promises appears to have expired by the end of 2011, before the Eleventh Circuit rendered its decision on the scope of §302. Second, it is arguable that respondent Mulhall, the sole plaintiff in this case, lacks Article III standing.

In my view, rather than dismiss the writ of certiorari as improvidently granted, the Court should simply ask for additional briefs addressing these two questions. If it turns out that the federal courts lack jurisdiction either because the case is moot or because Mulhall lacks standing, then we cannot reach the merits. But if that is the case, then we should likely order the Eleventh Circuit's decision vacated, thereby removing its precedential effect and leaving the merits question open to be resolved in a later case that does fall within the jurisdiction of the

federal courts.

I believe we should also ask for further briefing on a third question: the question whether §302 authorizes a private right of action. I recognize that the Court said, long ago and in passing, that §302(e) "permit[s] private litigants to obtain injunctions" for violations of §302. *Sinclair Refining Co.* v. *Atkinson*, 370 U. S. 195, 205 (1962), overruled in part on other grounds, *Boys Markets, Inc.* v. *Retail Clerks*, 398 U. S. 235, 237–238 (1970). But, in light of the Court's more restrictive views on private rights of action in recent decades, see, *e.g., Alexander* v. *Sandoval*, 532 U. S. 275, 286–287 (2001), the legal status of *Sinclair Refining*'s dictum is uncertain. And if §302 in fact does not provide a right of action to private parties like Mulhall, then courts will not need to reach difficult questions about the scope of §302, as happened in this case, unless the Federal Government decides to prosecute such cases rather than limit its attention to cases that clearly fall within the statute's core antibribery purpose.

Unless resolved, the differences among the Courts of Appeals could negatively affect the collective-bargaining process. This is because the Eleventh Circuit's decision raises the specter that an employer or union official could be found guilty of a crime that carries a 5-year maximum sentence, see 29 U. S. C. §186(d), if the employer or union official is found to have made certain commonplace organizing assistance agreements with the intent to "corrupt" or "extort." In my view, given the importance of the question presented to the collective-bargaining process, further briefing, rather than dismissal, is the better course of action.